

# IN THE
# TENTH COURT OF APPEALS

### No. 10-15-00105-CV

**PAUL REED HARPER,**

**Appellant**

**v.**

**GEORGE DARRELL BEST,**

**Appellee**

**From the 249th District Court
Somervell County, Texas
Trial Court No. C10369**

## O P I N I O N

George Best filed a petition to remove Paul Reed Harper as a board member of the Somervell County Hospital District. The State of Texas assumed the role of plaintiff pursuant to section 87.018(b) and (d) of the Texas Local Government Code. TEX. LOC. GOV'T CODE ANN. § 87.018(b), (d) (West 2008). Harper filed a motion to dismiss pursuant to the Texas Citizens Participation Act or TCPA (also known as the "Anti-SLAPP" statute), *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001, et seq. (West 2014), alleging that

the removal petition was based on Harper's exercise of his right to petition and/or his right of free speech. *Id*. §27.005(b). After a hearing, the trial court overruled Harper's motion to dismiss because the trial court did not "think the County or the State brought this with any animosity to try to prevent anything." Because the trial court erred in denying Harper's motion to dismiss, the trial court's order is reversed and this case is remanded to the trial court for the rendition of an order granting Harper's motion to dismiss and to consider Harper's request for court costs, reasonable attorney's fees, and sanctions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) (West 2014).

**BACKGROUND**

Harper was unhappy with the operations of the Somervell County Hospital District. In particular, he was unhappy with being taxed to operate the hospital. He ran for election as a hospital district board member. He ran on the platform that he would vote to set the hospital district tax rate at zero. The State alleged that once elected, Harper tried to fulfill his campaign promise. At a board meeting, he allegedly responded to a motion to set the tax rate with the comment, "I'd vote for zero." Later, a blog posted by Harper's wife was critical of the hospital administrator and other board members. Further, at some point, Harper had text communications with other board members regarding what he believed were various problems with the hospital district and the hospital and its administration.

Best, a citizen of Somervell County, filed a petition to remove Harper as a board

member of the hospital district pursuant to Chapter 87, Subchapter B of the Texas Local Government Code alleging Harper was incompetent by gross ignorance of his official duties and gross carelessness in discharging those duties. *See* TEX. LOC. GOV'T CODE ANN. §§ 87.013 and 87.015 (West 2008). The basis of Best's petition was that Harper's efforts to set the tax rate at zero were contrary to the continued existence of the hospital which, in turn, was contrary to the bylaws of the hospital district.

The State subsequently appeared in the suit and amended the style of the case to reflect that the petition for removal was brought in the name of the State and on the relation of Best. *See id*. § 87.018(b), (d); *see also Garcia v. Laughlin*, 285 S.W.2d 191, 194 (Tex. 1955) ("Individual citizens have no private interest distinguishable from the public as a whole and have no right to maintain an ouster suit without being joined by a proper state official."). The State added a claim that Harper violated the Open Meetings Act by communicating with other board members by text.

In layman's terms, the State takes the position that, by trying to reduce or eliminate the hospital district tax, Harper committed treason against the hospital district which, once elected, Harper had taken an oath to protect. Or, in other words, the State's argument is that by not voting to tax the citizens to allow for the continued existence of the hospital, Harper has failed in his duties to the hospital district.

This case presents a new question in the evolution of a citizen's interaction with government. On one side of the issue is a courthouse that is open to all types of suits;

including suits for the removal of incompetent elected officials.  On the other side is the use of the judicial process to stop citizens who choose to speak out on subjects of political importance.  The question, as applied to this suit, is whether we have arrived at the place where an unhappy politically active citizen who runs for office and is elected in a general election can then be charged as incompetent when, as an elected officeholder, the elected official tries to constrain or even eliminate the organization to which he was elected.  If the State of Texas can maintain a suit to hold an elected official incompetent under these circumstances, we have effectively criminalized the ability to shrink government by the political process.  Historically there would be no way to summarily stop such a suit.

However, even before recent legislation to provide a summary means to stop such suits from going forward, the Beaumont Court of Appeals explained why courts should not get involved in this type of dispute over essentially political decisions.  *See Harper v. Taylor*, 490 S.W.2d 227, 229-230 (Tex. App.—Beaumont 1972, no writ).  The issue in *Harper v. Taylor* involved the sufficiency of the evidence to remove members of a school board for their decision to remove a superintendent.  In arriving at a determination that the appellees' remedy was political, not judicial, the appellate court stated:

> Ours is a system of checks and balances and was devised by men who feared too much concentration of power and dispersed it at some cost, at times, to efficiency in government.  No division of our democracy, and no individual, be he judge or otherwise, has any monopoly on the knowledge of the route society must take to reach a better and more just way of life.  When public officials manifestly violate their duty, courts must have the courage to remove them or negate their actions.  But where in a discretionary decision, such as here, the most that can be said is that

perhaps poor judgment was used; for the courts to fly in and substitute their judgment for that of elected officials would be to undermine the very foundation of our political system. For over the long haul, we hew to the belief that the wisdom and instincts of the electorate is preferable to any other system of government devised by man.

*Id*. at 230. The pro- and anti-superintendent factions could be compared to the tax and no-tax factions in this case.

This case addresses that concern headlong and forthright under new legislation to protect the participation of citizens in the political discourse on topics of public concern. We conclude the government cannot proceed with this type litigation against a citizen engaged in that public discourse, even when that citizen is trying to dismantle the entity to which they are elected.

**TEXAS CITIZEN PARTICIPATION ACT**

In three issues on appeal, Harper asserts the trial court erred in denying Harper's motion to dismiss because the claims against Harper were based on, related to, or were in response to Harper's right to petition government and his right to free speech; the State did not present "clear and specific evidence" of a prima facie case of its claims; and if it did, Harper's affirmative defense of legislative immunity exempts Harper from the claims.

*Law*

The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015).

The Act provides a special procedure for the expedited dismissal of such suits. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a) (West 2014) ("If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action."). A two-step process is initiated by the motion of a defendant who believes that the lawsuit is in response to the defendant's exercise of First Amendment rights. *Lipsky*, 460 S.W.3d at 586.

Under the first step, the burden is on the movant, typically a defendant, to show "by a preponderance of the evidence" that the plaintiff's claim "is based on, relates to, or is in response to the [defendant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b) (West 2014); *Lipsky*, 460 S.W.3d at 586-87. If the defendant is able to demonstrate that the plaintiff's claim implicates one of these rights, the second step shifts the burden to the plaintiff to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c) (West 2014); *In re Lipsky*, 460 S.W.3d at 587.

Within defined time limits, the trial court must rule on the motion and must dismiss the plaintiff's claim if the defendant's constitutional rights are implicated and the plaintiff has not met the required showing of a prima facie case. Tex. Civ. Prac. & Rem. Code Ann. § 27.005 (West 2014); *In re Lipsky*, 460 S.W.3d at 587. In determining whether

the plaintiff's claim should be dismissed, the trial court is to consider the pleadings and any supporting and opposing affidavits. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a) (West 2014); *In re Lipsky*, 460 S.W.3d at 587.

*Enforcement Action*

The TCPA provides exceptions to the application of the statute. As relevant to this case, the TCPA "does not apply to an enforcement action that is brought in the name of this state or a political subdivision of this state by the attorney general, a district attorney, a criminal district attorney, or a county attorney." TEX. CIV. PRAC. & REM. CODE ANN. § 27.10(a) (West 2014).[1] So before determining whether the trial court erred in denying Harper's motion to dismiss, we must first address the State's contention at trial and on appeal that it is exempt from the application of the TCPA, and thus Harper is not entitled to a dismissal, because the State brought an *enforcement action* against Harper.

The question is: what is an enforcement action? That phrase is not defined by the statute. Words and phrases that are not defined by statute and that have not acquired a special or technical meaning are typically given their plain or common meaning. *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015); *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Hous. Sys.*, 255 S.W.3d 619, 633 (Tex. 2008).

The State contends the word "enforcement" should be given its plain meaning

---

[1] There is nothing in the record to show that the trial court overruled Harper's motion to dismiss because it determined the removal action was an enforcement action under the TCPA.

according to the definition supplied in Black's Law Dictionary. There, the word "enforcement" means "the act or process of compelling compliance with a law, mandate, command, decree, or agreement." BLACK'S LAW DICTIONARY (10th ed. 2014). And what the State is seeking to compel enforcement of is Harper's compliance with the hospital district's by-laws and Harper's duty as a board member. Using the above definition of enforcement, the State's argument continues, Chapter 87 of the Local Government Code, regarding removal of officers, is the State's legal tool to compel Harper's compliance.

But when using the above definition of enforcement, there is nothing in the removal statute with which the State is seeking to compel Harper's compliance. There are many exemplary enforcement provisions in the various codes in Texas that specify how to obtain compliance with their provisions. *See e.g.* TEX. HEALTH & SAFETY CODE ANN. § 12.0145 (West 2010); TEX. INS. CODE ANN. § 43.461 (West 2009); TEX. PROP. CODE ANN. § 209.006 (West 2014); TEX. WATER CODE ANN. § 7.002 (West 2008). A removal action, however, is not one of them. Removing Harper from the board of directors for the hospital district does not result in compliance with his duties as a board member. Rather, it seeks ouster from the position, not compliance with it. Harper cannot comply with his duties if he is no longer a board member.

Further, this removal petition is not an enforcement action for the alleged Open Meetings Act violation. There is an entirely different procedure to be followed for such an enforcement action. *See* TEX. GOV'T CODE ANN. § 551.141 *et seq*. (West 2012). If the Act

was violated, which we address later herein, this suit is not the method to bring an "enforcement action" in regard to that alleged violation.

Accordingly, under the facts of this case, because the removal of Harper as a hospital district board member under Chapter 87 of the Local Government Code is not an act or a process which compels compliance with a law or mandate, etc., the petition for removal is not an "enforcement action" and is not an exception to the TCPA.

**DISMISSAL UNDER THE TCPA**

We now move to a discussion regarding whether the State's case should be dismissed. As stated previously, there is a two-step process to determine whether the suit should be dismissed. Under the first step, Harper contends he showed by a preponderance of the evidence that the removal petition was based on, related to, or in response to Harper's exercise of his right of free speech and his right to petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b) (West 2014); *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015).

*Application*

The State does not dispute that the removal petition was based on, related to, or in response to Harper's exercise of his right to free speech and right to petition. Rather, the State argues that the TCPA does not apply to this case because case law has developed to reflect the statute's "intended application" such as in suits for damages, suits that limit the public's "right to know," and suits against non-public officials.

In construing a statute, we give effect to the Legislature's intent,[2] which requires us to first look to the statute's plain language. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015); *Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008). If that language is unambiguous, we interpret the statute according to its plain meaning. *Id*. We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted. *Lippincott*, 462 S.W.3d at 509; *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008).

The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits. *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West 2014). It protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *Lipsky*, 460 S.W.3d at 584. The language of the statute[3] is unambiguous as to its purpose and how to obtain a dismissal; thus, we interpret it

---

[2] "Legislative intent" is the phrase commonly used. It may be more appropriate to think of it as the "legislative purpose" of the statute. *See Ray v. State*, 419 S.W.3d 467, 468-469 (Tex. App.—Waco 2013, pet. ref'd) (discussing legislative intent and legislative purpose regarding the necessity defense). The purpose of the statute is generally more objective than the nebulous concept of the collective "intent" of a legislative body when there could be any number of intentions of individual legislators. But we will use the commonly referenced term.

[3] "The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West 2014).

"If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a) (West 2014).

according to its plain language. The State's suit attempts to remove Harper due to what he said regarding a matter before the hospital district board. Based on the plain language of the statute, this case falls within the statute's parameters. Contrary to the State's argument, simply because case law has not yet developed to reflect a dismissal based on the TCPA in a case such as this, does not mean the statute does not apply. Further, the State's argument seeks to limit the statute's applicability when we are directed to apply it liberally. TEX. CIV. PRAC. & REM. CODE ANN. § 27.011 (West 2014); *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015).

### *Based on or Relates to Free Speech or Right to Petition*

We now discuss whether Harper met his burden to show by a preponderance of the evidence that the removal suit was based on, related to, or was in response to Harper's exercise of his right of free speech or his right to petition.

The definition of the right of free speech has two components: (1) the exercise must be made in a communication and (2) the communication must be made in connection with a matter of public concern. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3) (West 2014); *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). A communication includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1) (West 2014). It need not be made solely in a public forum. *Lippincott*, 462 S.W.3d at 509. A matter of public concern includes an issue related to health or safety;

environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7) (West 2014). Additionally, as it pertains to this case, the exercise of the right to petition is defined as a communication in or pertaining to a proceeding before an entity that requires by rule that public notice be given before proceedings of that entity. *Id*. (4)(A)(v).

Harper argues that under these definitions, his oral statement made during the hospital district board meeting regarding the tax rate, his alleged blog post about the hospital district, hospital officials, and fellow board members, and his text messages about the hospital district were exercises of his right to free speech and his right to petition. We agree with Harper.

Each action complained of was an oral, written, or electronic communication made either in a public or private forum. According to Harper's affidavit attached to his motion to dismiss, the hospital district funds in part and oversees the operations of the Glen Rose Medical Center. The Medical Center has provided care to the residents of Glen Rose and the surrounding area for over 65 years. Thus, Harper's statement that he would "vote for zero" as the new tax rate for the hospital district is related to economic or community well-being and was made during a hospital district board meeting the by-laws of which require notice be given to the public before meetings of the board. Further, assuming without deciding the blog post was either written by or directed by Harper as the State

alleges, it is a communication made in exercise of Harper's right to free speech. Statements made about the administration of the hospital, about the hospital board members, or about the hospital itself pertain to matters of public concern, such as economic or community well-being, or public officers, as defined by the TCPA. Likewise, the texts messages discussed board policies and practices, and the actions or inactions of hospital administrators. These also pertain to matters of public concern, such as economic or community well-being, or public officers, as defined by the TCPA.

Based on our review of the petitions, exhibits, and affidavits, Harper has shown by a preponderance of the evidence that his statement at the board meeting, the blog, and the text messages were communications of public concern, and thus, the removal petition was based on, related to, or was in response to Harper's exercise of his right of free speech or his right to petition.

### Shifted Burden

The burden to defeat a dismissal under the TCPA now shifts to the State to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) (West 2014); *In re Lipsky*, 460 S.W.3d 460 S.W.3d 579, 587 (Tex. 2015).

The phrase "clear and specific evidence" is not defined and is not a recognized evidentiary standard. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) (West 2014); *Lipsky*, 460 S.W.3d at 589. Although it sounds similar to clear and convincing evidence, the

phrases are not legally synonymous. *Lipsky*, 460 S.W.3d at 589. However, proof by clear and specific evidence is not simply "fair notice" of a claim. *Id.* at 590. Rather, under the clear and specific evidence standard, a plaintiff must provide enough detail to show the factual basis for the plaintiff's claim. *Id*. at 591. This is not an elevated standard, does not categorically reject circumstantial evidence, and does not impose a higher burden of proof than that required of the plaintiff at trial. *Id*.

With this standard in mind, we turn to whether the State established a prima facie case for each essential element of its claim for removal by clear and specific evidence.

As previously stated, in determining whether the plaintiff's claim should be dismissed, the trial court is to consider the pleadings and any supporting and opposing affidavits. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a) (West 2014); *In re Lipsky*, 460 S.W.3d at 587. No affidavit was attached to or presented in support of the petition or supplemental petition for removal. No affidavits were presented in opposition to Harper's motion to dismiss. Instead, the State relies on testimony presented at a hearing on the State's motion to temporarily suspend Harper pending a jury trial on the removal petition. The hearing to temporarily suspend Harper occurred a few months prior to the hearing on Harper's motion to dismiss. The State relies on the testimony from the earlier hearing to show that it established by clear and specific evidence a prima facie case for

each essential element of its petition for removal.[4]

*Incompetence*

Chapter 87 of the Local Government Code governs the removal of county officers from office. *See* TEX. LOC. GOV'T CODE ANN. ch. 87 (West 2008). There is no dispute that Harper is a county officer covered by this statute. *See id*. § 87.012 (West 2008). According to the statute, an officer may be removed for incompetency, official misconduct, or intoxication. *Id*. § 87.013. Removal based on intoxication is not an issue in this case. As it pertains to this case, "incompetency" is defined by statute as gross ignorance of official duties or gross carelessness in the discharge of those duties. *Id*. § 87.011. A finding of incompetency, however, requires more than mere error in judgment. *De Anda v. State*, 131 S.W.3d 198, 202 (Tex. App.—San Antonio 2004, no pet.).

As stated previously, George Best alleged in his initial petition for removal, which the State adopted when it substituted itself in place of Best, that Harper was incompetent by gross ignorance of his official duties and gross carelessness in discharging those duties. Quoting the hospital district's by-laws, the petition alleged that, as a director of the hospital district board, Harper was required to "discharge the director's duties in

---

[4] We have grave doubts about whether the State can use, under the guise of "judicial notice," the testimony from the hearing to temporarily suspend Harper pending the outcome of the removal petition. However, with or without the testimony, the result is still the same; and neither party has complained about or objected to the use of the testimony. Accordingly, we will resolve the issues without regard to the manner the evidence was brought before the trial court. We note, however, that the proper way to have a trial court consider testimony from a prior hearing is to properly authenticate a transcription of the testimony and enter it into evidence. *See Davis v. State*, 293 S.W.3d 794, 798 (Tex. App.—Waco 2009, no pet.).

good faith, with ordinary care, and in a manner the director *reasonably believes to be in the best interest of the District*." (emphasis in petition). According to the petition, Harper's "stated intention" to set the tax rate at zero and a blog post that accused the hospital administration of illegal activity were "clearly not in the best interest of the District." The petition also listed the prohibited activities of a director as stated in the hospital district's by-laws. The lists of prohibited activities include: do any act in violation of the by-laws; do any act with intention of harming the hospital district; or do any act that would make it impossible or unnecessarily difficult to carry on the intended or ordinary business of the hospital district. Although not clearly articulated in the petition, it appears that Best believed Harper's statement about the tax rate and the blog post were acts prohibited by the by-laws. The State also added an allegation in its supplemental petition that Harper's text messages to other board members constituted incompetence because Harper advocated a position contrary to the hospital district's by-laws.

The State argues on appeal that Harper's attempt to set the tax rate at zero was an official act as a director for the hospital district and, as a director, Harper was prohibited from harming the hospital district and its operations. The State also argues that Harper was harming the hospital district and its operations by his text message to another board member acknowledging that if they could not stop the tax, the voters should have the opportunity to have a say in paying the tax or dissolving the hospital district. Harper

acknowledged in that text that dissolution of the hospital district "would likely close the hospital."

But there was no evidence that Harper *did* anything; no evidence that Harper took an official action or made an official motion about which Best and the State complain that demonstrated Harper's incompetence. Earl Ray Reynolds, the hospital's administrator, testified at the hearing for temporary suspension that there was a meeting of the board of directors to set the hospital district tax rate which had been previously set by a temporary board. Reynolds recalled that, as a part of the discussion on the tax rate, Harper suggested that the tax rate be set at zero. Reynolds and Best, who also testified at the hearing, agreed there was no vote on Harper's suggestion. Best testified that a motion was made to set the tax rate and Harper "jumped in" and said, "I'd vote for zero." Best acknowledged that the chair did not recognize Harper, no one seconded Harper's statement, and the discussion as to the tax rate ended. Further, the board ultimately voted to set the tax rate at an amount greater than what the temporary board had set.

This is not like the situation in *Tautenhahn v. State*, 334 S.W.2d 574, 585 (Tex. Civ. App.—Waco 1960, writ ref'd n.r.e.) where the appellate court found the evidence to be sufficient to support the removal of certain school board trustees for incompetency. There, the trustees deliberately set (moved, seconded, discussed, voted, and approved) a tax rate at an amount which was insufficient to operate the school for the entire term. Here, Harper simply made a statement about what tax rate he would support. There was

no motion, no second, no discussion, and no vote.[5]

As to the text message, Harper testified that, although he only recalled making the statement as to the voters deciding dissolution, he agreed that dissolution of the hospital district would likely close the hospital. This text, however, was not an official act or a call to action by the other board members. Harper stated he was not trying to influence the other board members. His testimony was that he tries to convince people of his way of thinking at the board meetings.

Accordingly, the State did not establish by clear and specific evidence that Harper's comment about setting a tax rate of zero or his text message acknowledging possible or probable closure of the hospital if the voters wanted dissolution of the district constituted gross ignorance of or gross carelessness in discharging Harper's official duties.

As to the blog post, the State argues that the information depicted in it could have only come from Harper and showed Harper's "complete disdain for the entity he is charged with representing both competently and with good faith." The domain for the blog was owned by Harper, but the blog was operated and managed by Harper's wife, Debbie. Further, although Harper had told Debbie what had happened at the board meeting where he made the zero tax rate comment, the opinions expressed in the blog

---

[5] We express no opinion on whether the outcome of this proceeding or the analysis would be any different if Harper had formally taken some action to lower or reduce the district's tax rate.

were Debbie's. When asked if he could keep Debbie from posting her opinions, Harper testified, "It doesn't matter what I think. What she wants to post, she can post. That's her business, it's not mine." Witnesses for the State could not say that Harper ran the blog and posted the opinion. Consequently, the State did not establish by clear and specific evidence that Harper was grossly ignorant of or grossly careless in discharging Harper's official duties due to the opinions posted in the blog.

Further, we note that the hospital board oath does not require loyalty to the existing board members or officers of the hospital. Even if it was shown that the statements were Harper's or could be attributed to him, he is not prohibited from seeking a change in administration and management of the district board or hospital by stating his perception of the problems of the current board and hospital administration.

Accordingly, because the State did not establish incompetency by clear and specific evidence, the trial court erred in denying Harper's motion to dismiss the petition to remove on those grounds.

*Official Misconduct*

The State also alleged in its supplemental petition that Harper should be removed from office for committing official misconduct because he violated the Open Meetings Act. "Official misconduct" means intentional, unlawful behavior relating to official duties by an officer entrusted with the administration of justice or the execution of the law. TEX. LOCAL GOV'T CODE ANN § 87.011(3) (West 2008). The term includes an

intentional or corrupt failure, refusal, or neglect of an officer to perform a duty imposed on the officer by law. *Id*.

The State attached a series of text messages between Harper and board member, John Parker, and a series of text messages between Harper and another board member, Chip Harrison, to its supplemental petition. The State alleged that within those two sets of communications, a "walking discussion" between the three board members is seen and a dialogue with a fourth board member is referenced. Citing section 551.143 of the Texas Government Code, the State argued that this was an attempt by Harper to circumvent and thus violate the Open Meetings Act.

Generally, every regular, special, or called meeting of a governmental body shall be open to the public. TEX. GOV'T CODE ANN. § 551.002 (West 2012). As it pertains to this case, a meeting is "a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed." *Id*. § 551.001(4)(A). A quorum is a majority of a governmental body. *Id*. (5).

Section 551.143 provides that a member or group of members of a governmental body commits an offense if the member or group of members knowingly conspires to circumvent the Open Meetings Act by meeting in numbers less than a quorum for the purpose of secret deliberations in violation of the Act. TEX. GOV'T CODE ANN. § 551.143 (West 2012). At first glance, it appears that Harper may have committed an offense by

texting the two other board members.  However, this provision has been construed to apply to members of a governmental body who gather in numbers that do not physically constitute a quorum at any one time but who, through successive gatherings, secretly discuss a public matter with a quorum of that body.  Tex. Att'y Gen. Op. GA-0326, *2 (2005).  *See Esperanza Peace and Justice Center v. City of San Antonio*, 316 F. Supp. 2d 433, 476 (W.D. Tex 2001); *see also Asgeirsson v. Abbott*, 773 F. Supp. 2d 684, 706-707 (W.D. Tex. 2011); *Willmann v. City of San Antonio*, 123 S.W.3d 469, 478 (Tex. App.—San Antonio 2003, pet. denied).

A quorum of the district's board consists of at least four members.  The texts supplied by the State show conversations between Harper and Parker and Harper and Harrison.  Both sets of texts involve conversations about the tax rate and other matters regarding the hospital district and the hospital.  At one point in a text to Parker, Harper stated, "I told chip [sic] [Harrison] and Eugene I had a number of motions, did not get into what they were[.] I think we are still good at this point."  Eugene was another district board member.

The State argues that this reference to Eugene established a "walking quorum" and thus, the State argues, Harper violated section 551.143 of the Open Meetings Act. Assuming without deciding that the reference established a "walking quorum," in order to violate section 551.43, the "walking quorum" still must conduct "deliberations."  TEX. GOV'T CODE ANN. § 551.143 (West 2012).  A deliberation is defined by the Act as a verbal

exchange concerning an issue within the jurisdiction of the governmental body or any public business.  *Id*. § 551.001(2).  This reference to Eugene does not indicate that deliberations were conducted.  Harper mentioned in his text that he told Eugene that he had several motions but that he did not "get into" the subject of those motions.  Nothing was presented to show that an exchange occurred between Harper and Eugene about an issue within the jurisdiction of the board or any public business, particularly the issues discussed with Parker and Harrison.  Thus, the State did not establish by clear and specific evidence that Harper committed official misconduct by violating section 551.143 which would be a violation of the Open Meetings Act.

Accordingly, the State did not establish by clear and specific evidence that Harper committed official misconduct under the removal statute, TEX. LOCAL GOV'T CODE ANN. §§ 87.013(a); 87.011(3) (West 2008), and the trial court erred in overruling Harper's motion to dismiss on that ground.

Harper's first and second issues are sustained.[6]

**CONCLUSION**

Having determined that the trial court erred in failing to dismiss the State's petition for removal, the trial court's order denying Harper's motion to dismiss signed on March 11, 2015 is reversed.  This proceeding is remanded to the trial court for rendition

---

[6] Because we sustain Harper's second issue, we need not address his third issue regarding Harper's affirmative defense of legislative immunity.

of an order granting Harper's motion to dismiss and for a determination of Harper's request for court costs, reasonable attorney's fees, and sanctions.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Reversed and remanded
Opinion delivered and filed April 21, 2016
[CV06]

