

## IN THE
## TENTH COURT OF APPEALS

### No. 10-15-00194-CV

**BILL YOUNGKIN,**

**Appellant**

 **v.**

**BILLY G. HINES, JR.,**

**Appellee**

From the 85th District Court
Brazos County, Texas
Trial Court No. 13-002356-CV-85

## O P I N I O N

Appellant Bill Youngkin, an attorney, represented plaintiffs Buetta and Rajena Scott in a lawsuit that sought to give them ownership of 45 acres that was part of a 285-acre tract in Brazos County.[1] The Scotts alleged that they had paid all of the property taxes on the family-owned land and that, because the other heirs had not contributed to paying the taxes, the other heirs should lose their ownership interests. Appellee Billy G. Hines, Jr., one of the defendants in the Scotts' suit, asserted that he had paid all or part of the taxes on the 45 acres.

---

[1] We recently decided the appeal of that lawsuit, and our opinion discusses the 285-acre tract's history. *See Capps v. Foster,* No. 10-14-00061-CV, 2016 WL 279022, at *1-2 (Tex. App.—Waco Jan. 21, 2016, pet. denied) (mem. op.).

During trial, the Scotts[2] and Hines announced a settlement in open court that was dictated into the record by Youngkin:

> MR. YOUNGKIN: Your Honor, we've reached an agreement with Mr. Sargent's client Reverend Hines. That agreement - - he is one of the heirs of Alex Scott, and it will be set forth in the judgment. But what he's going to do today, Judge, is we've agreed that he's going to convey his undivided interest in the surface estate of the 285 acres but he's going to retain his mineral interests in that same property.
>
> And I will tell the Court that as part of my client's intention and agreement with Mr. Sargent's client - - there is a portion of this property that was deeded to the Scott heirs, 45 acres that has - - not a valid description to it but we're going to convey by valid description, the undivided one half interest this judgment would produce so that the Alex Scott heirs would have 100 percent ownership in that 45-acre tract yet to be surveyed with the property description and provide a copy of that survey and that deed to Mr. Sargent before it's filed; and we'll do all this once this judgment becomes final, Judge.

Hines then confirmed that agreement on the record in response to questions from his lawyer:

> Q      Can you state your name for the record, please?
>
> A      Bill Hines.
>
> Q      Mr. Hines, did you hear Mr. Youngkin's – what he recited to the Judge?
>
> A      Yes, I did.
>
> Q      Did you understand it?
>
> A      Yes, sir.
>
> Q      Does that reflect the agreement and understanding that we entered into back in the jury room?
>
> A      Yes, it does.
>
> . . .

---

[2] The Scotts were not present at trial.

Q        And it's your understanding that you're conveying only – the surface estate only in the 285-acre tract?

A        Yes.

Q        Upon the conclusion of this suit the plaintiffs Mrs. Buetta and Rajena Scott are going to convey 50 percent of their interest in the Alex Scott survey back to the heirs of Alex Scott?

A        Yes.

Q        And at that time you all will own 100 percent of the Alex Scott subject?

A        Yes.

THE COURT:  All right.

MR. YOUNGKIN:  We'll conclude that with a deed as soon as this is over with, Judge.

Your Honor, if –

THE COURT:  Thank you very much.

Hines's attorney later drafted a letter agreement to formalize that settlement.  The letter provides:

> This letter will serve as confirmation of the recital announced in Court on December 15, 2010.  My client, Billy G. Hines, Jr. will allow his undivided interest in the original 285.5 acre tract in the J.M. Berrera Survey, Brazos County, Texas to pass to the Plaintiffs, Buetta and Rajena Scott.  In exchange, Billy G. Hines, Jr.'s interest in the above-referenced property will be retained in the Alex Scott 45 acre tract of land only (part of 285.5 acre tract).  After judgment has been entered, Billy G. Hines, Jr.'s interest will be reinstated by deed from the Plaintiffs, Buetta and Rajena Scott in the 45 acre tract set aside exclusively to the Scott heirs.
>
> If this is not your understanding, please contact my office to discuss this matter.  If this letter correctly reflects your understanding, please sign below for filing with the Court pursuant to Rule 11 of the Texas Rules of Civil Procedure.

The letter agreement was signed by Hines and his attorney and by Youngkin, but not by the Scotts.

Hines alleges that, after the judgment was signed, (1) the Scotts, with Youngkin's deed preparation, conveyed all of their title in the 45 acres to "Curtis Capps, Trustee," and (2) Hines conveyed his interest in the surface estate of the 285 acres to the Scotts, but the Scotts could not perform their part of the settlement agreement of conveying the 45 acres to Hines and to the Alex Scott heirs because the Scotts had already conveyed the 45 acres to Capps. Capps later executed a deed to Hines for only Hines's individual undivided interest in the 45 acres.

Hines then filed suit against the Scotts and Capps, with Hines alleging that the Scotts and Capps (all originally represented by Youngkin) had defrauded him by failing to comply with the settlement agreement that had been announced on the record in the earlier case. Hines seeks to set aside (rescind) the settlement agreement and to cancel the deed that Hines had executed, or in the alternative, to enforce the settlement agreement and to compel the Scotts and Capps to convey the 45 acres to Hines.[3]

Hines amended his lawsuit to add Youngkin as a defendant and asserted fraud and conspiracy claims against Youngkin.[4] The second amended petition specifically alleges in pertinent part:

> 5. Billy G. Hines, Jr. was induced to enter into an agreement pursuant to Texas Rule of Procedure 11 purportedly to settle the case filed by Buetta and Rajena Scott against him and other Defendants. The agreement was never fully consummated before the filing of this suit. Billy G. Hines revoked his portion of

---

[3] The Scotts and Youngkin generally contend that they complied with the written settlement agreement and that it trumps the settlement agreement that was dictated into the record. In this appeal, Youngkin frequently asserts that the letter agreement supersedes the first "oral" agreement, and he raises the parol evidence rule for the first time on appeal with respect to the allegedly "oral" agreement. *Cf.* TEX. R. CIV. P. 11 (providing for the enforcement of agreements "made in open court and entered of record"). We agree with Hines that the parol evidence rule is not properly before us in this appeal, and we note that the letter agreement does not necessarily supersede the original in-court agreement. *See Fort Worth ISD v. City of Fort Worth,* 22 S.W.3d 831, 840 (Tex. 2000) ([It is] "well-established law that instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other, and that a court may determine, as a matter of law, that multiple documents comprise a written contract. In appropriate instances, courts may construe all the documents as if they were part of a single, unified instrument.") (footnoted citations omitted).

[4] Hines also filed a motion to disqualify Youngkin; the trial court denied that motion.

the agreement and filed this suit due to the failure of the Scott Defendants to provide consideration and consummate the agreement. Hines asked [*sic*] the Court for a recission [*sic*] and cancellation of the deed he had been induced to deliver. The Rule 11 Agreement had called for Hines to execute a deed and in return the Scotts would reciprocate by executing a deed to him individually and for the benefit of the other Scott Defendants. The Scotts, in joint venture or conspiracy with Capps, then used the Rule 11 Agreement to proceed to judgment in the case and the judgment may have not become procedurally "final" as to Hines and the other Scott Defendants. Billy G. Hines executed a deed and delivered it to the attorney for Buetta Scott and Rajena Scott pursuant to the Rule 11 Agreement. The Scott Defendants filed that deed for record. However, instead of completing the Rule 11 Agreement by conveying all of their interest in the 45 acre Scott Tract, the Scott Plaintiffs conveyed their interest in that tract granted by the judgment to Curtis Capps who then inequitably used it against third parties, Hines, and the other Scott heirs in another lawsuit to attempt to oust them of title to such 45 acres of the land in question in this case. This was a fraudulent misrepresentation involving a transaction in real estate.

….

7. … Plaintiff requests the Court to enforce specific performance of the Rule 11 Agreement made by the Scott Defendants through their attorney, Bill Youngkin and require them and their co-conspirators, Curtis Capps and Bill Youngkin, to convey all of their interest in the 45 acres so that it may be used and enjoyed exclusively by Plaintiff and the other Scott heirs.

8. … Plaintiff asserts … an agreement was reached between Bill Youngkin, his client, Buetta Scott and Rajena Scott whereby Billy G. Hines, Jr. agreed he would convey his undivided interest in the surface acres of the entire 285 acres in dispute as consideration for a conveyance from Buetta Scott and Rajena Scott of all their interest in the 45 acres including their interest transferred by Final Judgment in said Cause No. 10-000305-CV-85 in dispute herein and that upon such conveyance from Buetta Scott and Rajena Scott, the Alex Scott Heirs including Plaintiff would have 100 percent ownership in said 45 acre tract.

9. This Rule 11 Agreement as originally agreed to by Plaintiff and Buetta Scott and Rajena Scott and Bill Youngkin was fully stated … and was dictated into the Court's record. … Thus, Defendant Capps' deed allegedly given for consideration of fulfillment of that agreement should be reformed so that it will convey all of Buetta Scott and Rajena Scott's interest in the 45 acres that was acquired pursuant to the Judgment in Cause No. 10-000305-CV-85 so that the Scott Heirs will have 100 percent ownership in the 45 acre tract for their exclusive use.

10. Plaintiff was at all times ready, willing and able to perform his part of the contract and has in fact performed. Pursuant to such performance, on March 27, 2011, Plaintiff executed and delivered by general warranty deed to Defendants

Buetta Scott and Rajena Scott all of his interest in that certain 285.5 acre tract in the J.M. Barrera Survey, Brazos County, Texas. Defendants however have refused and failed to convey the 45 acre Alex Scott property to Plaintiff, and instead have conveyed all their interest in both the 285.5 acres to Curtis Capps, as well as that portion of the 285.5 acres, subsequently surveyed and described as 44.878 acres a/k/a 45 acres.

….

21. … Plaintiff asserts that at all times Defendant Bill Youngkin acted as the agent for Defendants Buetta Scott and Rajena Scott and on their behalf made the promises, false representations and inducements at the December 15, 2010 hearing in Cause No. 10-000305-CV in the 85th District Court upon which Plaintiff relied in entering into the Rule 11 Agreement. *Plaintiff contends that Defendant Bill Youngkin conspired with Defendants in an scheme to deprive Plaintiff of his interest in the 285 acres, that he participated in obtaining the Rule 11 Agreement knowing that Defendants Buetta Capps [sic] and Rajena Capps [sic] had no intention of performing and that their interests acquired by the fraudulently obtained judgment in Cause No. 10-000305-CV would almost be immediately conveyed to Defendant Capps.* [Emphasis added.]

22. *If Defendant Youngkin acted without authority or approval from either Buetta and/or Rajena Scott so that he could obtain Plaintiff's agreement for the December 15, 2010 Final Judgment in order to further his own conspiracy and scheme with Defendant Capps to acquire Plaintiff's title and agreement to convey, then Plaintiff entered into the Rule 11 Agreement in reliance upon the false representations made by Bill Youngkin on December 15, 2010. Defendant Bill Youngkin intended that Plaintiff rely on his false representations which were intended to induce Plaintiff into entering into the Agreement.* [Emphasis added.]

23. *Since the Defendant Curtis Capps acquired the interest subject to the deeds from Buetta Scott and Rajena Scott at the time that he was also represented by Mr. Bill Youngkin, the three principals acted in accordance with the multiple misrepresentations made by Defendant Youngkin to the Court and to the Plaintiffs and have fraudulently induced Plaintiff to convey his undivided interest in the 285 acre tract to Buetta and Rajena Scott and ultimately to Capps.* Thereafter, Curtis Capps used the wrongfully and/or fraudulently obtained interest under the deeds in an inequitable manner to pursue claims against third parties including Plaintiff and the other Scott heirs for divestiture of title to land by filing suits and using the wrongfully obtained deeds as an assertion of ownership and/or title to land. *If Capps is found to have been in possession and knowledge of the Scotts' obligations and their failure to perform he is not a bona fide purchaser. Based upon this knowledge Capps and Youngkin should be deemed as parties to the Scotts' fraud and/or misrepresentation and failure to perform under the written agreement entered into by Youngkin as the attorney for the Scotts. To the extent all Defendants operated together to achieve the inequitable result of obtaining a deed form Billy*

*G. Hines to a real property interest, they have conspired to deprive him of a real property interest and obtain a judgment by the misconduct and should be subject to the same penalties for disgorgement of the interest they have obtained, statutory damages and cancellation of the deed.* [Emphasis added.]

In response to being added as a defendant, Youngkin filed a motion to dismiss Hines's claims under the Texas Citizens Participation Act (TCPA), known as an anti-SLAPP law ("strategic lawsuit against public participation"). *See generally In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015); *Harper v. Best,* --- S.W.3d ---, 2016 WL 1613546 (Tex. App.—Waco Apr. 21, 2016, no pet. h.); Laura Lee Prather & Justice Jane Bland, *Bullies Beware: Safeguarding Constitutional Rights Through Anti-SLAPP in Texas,* 47 TEX. TECH L. REV. 725 (2015). The trial court denied Youngkin's motion to dismiss, and Youngkin appeals. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008(b) (West 2015), § 51.014(a)(12) (West Supp. 2015).

Youngkin's first issue asserts that the trial court erred by refusing to dismiss Hines's claims against him under the TCPA. "The purpose of [the TCPA] is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West 2015). The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits. *Lipsky*, 460 S.W.3d at 589. It protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *Id.* at 586.

The TCPA provides a special procedure for the expedited dismissal of such suits. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a) (West 2015) ("If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action."). A two-step process is

initiated by motion of a party (typically a defendant) who believes that the lawsuit is in response to the defendant's exercise of First Amendment rights. *Lipsky*, 460 S.W.3d at 586.

Under the first step, the burden is on the movant, typically a defendant, to show "by a preponderance of the evidence" that the plaintiff's claim "is based on, relates to, or is in response to the [defendant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b) (West 2015); *Lipsky*, 460 S.W.3d at 586-87. If the defendant is able to demonstrate that the plaintiff's claim implicates one of these rights, the second step shifts the burden to the plaintiff to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *Lipsky*, 460 S.W.3d at 587. Further, the trial court "shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d).

The trial court must timely rule on the motion and must dismiss the plaintiff's claim if the defendant's constitutional rights are implicated and the plaintiff has not met the required showing of a prima facie case. *Id.* § 27.005; *Lipsky*, 460 S.W.3d at 587. In determining whether the plaintiff's claim should be dismissed, the trial court is to consider the pleadings and any supporting and opposing affidavits. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a) (West 2015); *Lipsky*, 460 S.W.3d at 587.

We review de novo a trial court's ruling on a motion to dismiss under the TCPA. *Johnson-Todd v. Morgan,* 480 S.W.3d 605, 609 (Tex. App.—Beaumont 2015, pet. denied). In reviewing the trial court's ruling, we consider the pleadings and the evidence that the trial court considered.[5]

---

[5] Youngkin did not request the trial court to issue findings, as provided by section 27.007. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.007(a) (West 2015) ("the court shall issue findings regarding whether the legal action was

*Id.* We view the pleadings and the evidence in the light most favorable to Hines, who is both the nonmovant and the prevailing party below. *Sloat v. Rathbun,* --- S.W.3d ---, ---, 2015 WL 6830927, at *3 (Tex. App.—Austin Nov. 6, 2015, pet. filed); *see also James v. Calkins,* 446 S.W.3d 135, 147-48 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Cheniere Energy, Inc. v. Lotfi,* 449 S.W.3d 210, 214 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

We first address whether Youngkin has shown by a preponderance of the evidence that Hines's claims pertaining to Youngkin's in-court statements implicate Youngkin's exercise of the right to petition. Under the TCPA, "exercise of the right to petition" means, among other things, "a communication in or pertaining to … a judicial proceeding." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A)(i) (West 2015). A "'[c]ommunication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). The exercise of the right to petition under the TCPA includes an attorney's in-court communications. *Johnson-Todd,* 480 S.W.3d at 609; *see also James,* 446 S.W.3d at 147-48 (TCPA applied to opposing attorney's conduct in litigation and filing of notice of lis pendens).

Hines's live pleading and the parties' summary-judgment evidence[6] demonstrate that Hines's claims are largely based on Youngkin's in-court statements pertaining to the Rule 11 agreement that was dictated into the record. Because the exercise of the right to petition under the TCPA includes an attorney's in-court communications, we hold that Youngkin met his initial burden under the TCPA of showing by a preponderance of the evidence that Hines's claims implicate Youngkin's exercise of the right to petition.

---

brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation").

[6] Youngkin had filed a motion for summary judgment.

We thus move to the second step, which shifts the burden to Hines to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). "Clear and specific evidence" includes circumstantial evidence, which is "simply indirect evidence that creates an inference to establish a central fact." *Lipsky*, 460 S.W.3d at 584, 588-89. A "prima facie case" "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted and is the "'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* at 590.

We also address whether Youngkin established by a preponderance of the evidence each essential element of a valid defense—in this case, the litigation privilege—to Hines's claims. As discussed above, we examine the evidence in the light most favorable to Hines.

We first address Youngkin's litigation-privilege defense, which was raised in his memorandum in support of his motion to dismiss. Youngkin's trial-court memorandum and his brief include this quotation:

> The litigation privilege protects an attorney from personal liability stemming from conduct that the "attorney engages in as part of the discharge of his duties in representing a party in a lawsuit." *Bradt v. West,* 892 S.W.2d 56, 72 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (op. on reh'g). "Stated differently, an attorney cannot be held liable to a third party for conduct that requires 'the office, professional training, skill, and authority of an attorney.'" *Miller v. Stonehenge/FASA-Texas, JDC, L.P.,* 993 F.Supp. 461, 464 (N.D. Tex. 1998) (quoting *Taco Bell Corp. v. Cracken,* 939 F.Supp. 528, 532 (N.D. Tex. 1996)). The litigation privilege focuses on the *type* of conduct engaged in by the attorney, rather than on whether the conduct was meritorious in the context of the underlying lawsuit. *Bradt,* 892 S.W.2d at 72 (stating that, for example, attorney could not be sued by opposing party for filing meritless or frivolous motions, "because making motions is conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit"). If an attorney's conduct violates his professional responsibility, the remedy is "public, not private." *Renfroe v. Jones & Assocs.,* 947 S.W.2d 285, 287 (Tex. App.—Fort Worth 1997, writ denied). The purpose behind the litigation privilege is to protect an attorney's "right to interpose any defense or supposed defense and make use of any right in behalf of such client or clients as [the attorney] deem[s] proper and necessary, without making himself subject to liability in damages." *Morris v. Bailey,* 398 S.W.2d 946, 947 (Tex. Civ.

App.—Austin 1966, writ ref'd n.r.e.). Any other policy "would dilute the vigor with which Texas attorneys represent their clients, which would not be in the best interests of justice." *Bradt,* 892 S.W.2d at 72.

[The plaintiff/appellant] argues that his claims against the Attorney Appellees are not barred by the litigation privilege because they arise from fraudulent conduct, which is "foreign to the duties of an attorney." *Poole v. Houston & T.C. Ry. Co.,* 58 Tex. 134, 137 (1882). The litigation privilege is inapplicable if an attorney knowingly participates in fraudulent activities outside the scope of his legal representation of the client. *See Likover v. Sunflower Terrace II Ltd.,* 696 S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ) (holding attorney liable for assisting client in perpetrating fraudulent business scheme involving sale of apartment complex); *Bourland v. State,* 528 S.W.2d 350, 357 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.) (holding attorney liable for misrepresentations made to investors in client's fraudulent real estate scheme). In the present case, however, the complained-of actions taken by the Attorney Appellees are all actions that fall within the context of their duty to represent Michels in litigation—filing a lawsuit for injunctive relief, seeking and obtaining a temporary restraining order, and negotiating and filing a Rule 11 agreement. Such actions, which require the professional training, skill, and authority of an attorney, have been considered insufficient to form the basis of a fraud claim against an attorney by a non-client. *See Alpert v. Crain, Caton & James, P.C.,* 178 S.W.3d 398, 408 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding that litigation privilege bars fraud claim based on actions such as filing lawsuits and pleadings, providing legal advice, and awareness of settlement negotiations); *White v. Bayless,* 32 S.W.3d 271, 276 (Tex. App.—San Antonio 2000, pet. dism'd w.o.j.) (holding that claim of conspiracy to commit fraud was barred by litigation privilege because attorneys' actions of preparing and filing various pleadings were "actions taken as attorneys representing their client"). Furthermore, an attorney owes no duty to non-client parties in the adversarial context of litigation. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 795 (Tex. 1999) ("[A] third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context."); *see also Chu v. Hong,* 249 S.W.3d 441, 446 n.19 (Tex. 2008) (citing *McCamish* for proposition that "fraud actions cannot be brought against an opposing attorney in litigation as reliance in those circumstances is unreasonable").

*Michels v. Zeifman,* No. 03-08-00287-CV, 2009 WL 349167, at *2-3 (Tex. App.—Austin Feb. 12, 2009, no pet.) (mem. op.).

On the other hand, the rule does not provide absolute immunity for every tort committed by a lawyer, however tangentially related to her professional role. … An attorney also may be subject to liability for committing fraud or conspiring with her client to defraud another. *See Transtexas Gas Corp. v. Stanley,* 881 F.Supp. 268, 270–71 (S.D. Tex. 1994); *Likover v. Sunflower Terrace II Ltd.,* 696

S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ); *Kirby v. Cruce,* 688 S.W.2d 161, 164–65 (Tex. App.—Dallas 1985, writ ref'd n.r.e.); *Bourland v. State of Texas,* 528 S.W.2d 350, 353–55 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.).

*Miller,* 993 F.Supp. at 464-65.

In response to Youngkin's litigation-privilege defense, Hines cites to and quotes from

*Likover*, which is cited in Youngkin's above quotation from *Michels*:

> An attorney has no general duty to the opposing party, but he is liable for injuries to third parties when his conduct is fraudulent or malicious. He is not liable for breach of a duty to the third party, but he is liable for fraud. *Wilbourn v. Mostek Corp.,* 537 F.Supp. 302 (D. Colo. 1982).
>
> A lawyer is authorized to practice his profession, to advise his clients, and to interpose any defense or supposed defense, without making himself liable for damages. *Morris v. Bailey,* 398 S.W.2d 946 (Tex. Civ. App.—Austin 1966, writ ref'd n.r.e.); *Kruegel v. Murphy,* 126 S.W. 343, 345 (Tex. Civ. App. 1910, writ ref'd).
>
> However, an attorney is liable if he knowingly commits a fraudulent act that injures a third person, or if he knowingly enters into a conspiracy to defraud a third person. *Hennigan v. Harris County,* 593 S.W.2d 380 (Tex. Civ. App.—Waco 1979, no writ). Over 100 years ago, the Supreme Court of Texas held that where a lawyer acting for his client participates in fraudulent activities, his action in so doing is "foreign to the duties of an attorney." *Poole v. Houston & T.C. Ry,* 58 Tex. 134, 137 (1882). The Court held that a lawyer could not shield himself from liability on the ground that he was an agent, because no one is justified on that ground in knowingly committing a willfull and premeditated fraud for another. *Id.* at 137-38.

*Likover,* 696 S.W.2d at 472. Hines also points out that *McCamish* holds that, under certain

circumstances, an attorney can be liable for negligent misrepresentation to a nonparty. *See*

*McCamish,* 991 S.W.2d at 793-94.

Youngkin's litigation-privilege defense thus leads us back to Hines's common-law fraud,

statutory fraud, and conspiracy claims.

> "A plaintiff seeking to prevail on a fraud claim must prove that (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent

that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.,* 348 S.W.3d 194, 217 (Tex. 2011).

*James,* 446 S.W.3d at 148.[7]

> To prove statutory fraud in a real estate transaction, a plaintiff must show: (1) a false representation of a past or existing material fact, when the false representation is (A) made to a person for the purpose of inducing the person to enter into a contract and (B) relied on by that person in entering into that contract; or (2) a false promise to do an act, when the false promise is (A) material, (B) made with the intention of not fulfilling it, (C) made to a person for the purpose of inducing that person to enter into a contract, and (D) relied on by that person in entering into that contract. TEX. BUS. & COMM. CODE ANN. § 27.01(a) (Vernon 2002).

*Coldwell Banker Whiteside Assocs. v. Ryan Equity Partners, Ltd.,* 181 S.W.3d 879, 888 (Tex. App.—Dallas 2006, no pet.).

"'[I]ntent to defraud is not susceptible to direct proof [and] invariably must be proven by circumstantial evidence.'" *Lipsky,* 460 S.W.3d at 588 (quoting *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex. 1986)).

> "A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Formosa Plastics,* 960 S.W.2d at 48. "Proving that a party had no intention of performing at the time a contract was made is not easy, as intent to defraud is not usually susceptible to direct proof." *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 305 (Tex. 2006) (citing *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex. 1986)). While breach of the contract alone is not evidence that a party did not intend to perform, "breach combined with 'slight circumstantial evidence' of fraud" is some evidence of fraudulent intent, enough to support a verdict. *Id.* "[A] party's intent is determined at the time the party made the representation, [but] it may be inferred from the party's subsequent acts after the representation is made." *Spoljaric,* 708 S.W.2d at 434 (citing *Chicago, T. & M.C. Ry. Co. v. Titterington,* 84 Tex. 218, 19 S.W. 472, 474 (1892)).

---

[7] Because Youngkin's argument that Hines could not have justifiably relied on Youngkin's representations is raised for the first time on appeal, that issue is not before us. Also, the TCPA does not provide a procedural avenue for raising potentially dispositive legal questions; it only provides for the nonmovant's establishment of a prima facie case or the movant's establish of a valid defense by a preponderance of the evidence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c, d).

*Aquaplex, Inc. v. Rancho La Valencia, Inc.,* 297 S.W.3d 768, 774-75 (Tex. 2009).

> An actionable civil conspiracy is a combination by "two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Cotten v. Weatherford Bancshares, Inc.,* 187 S.W.3d 687, 701 (Tex. App.—Fort Worth 2006, pet. denied). The essential elements of a civil conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Id.* A defendant's liability for conspiracy depends on "participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Id.; see also Carroll v. Timmers Chevrolet, Inc.,* 592 S.W.2d 922, 925 (Tex. 1979) ("It is not the agreement itself, but an injury to the plaintiff resulting from an act done pursuant to the common purpose that gives rise to the cause of action."). Recovery for civil conspiracy is not based on the conspiracy but on the underlying tort. *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex. 1996) (orig. proceeding) (op. on reh'g). Once a civil conspiracy is proven, each coconspirator "is responsible for all acts done by any of the conspirators in furtherance of the unlawful combination." *Carroll,* 592 S.W.2d at 926. A civil conspiracy claim may be proved by circumstantial evidence and reasonable inferences from parties' actions. *Int'l Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 581 (Tex. 1963).

*In re Lipsky,* 411 S.W.3d 530, 549 (Tex. App.—Fort Worth 2013, orig. proceeding), *mand. denied,*

460 S.W.3d 579 (Tex. 2015).

Hines's affidavit provides in pertinent part:

> 6. … I personally appeared with my attorney in court and prior to the case being called entered into negotiations to settle the claims against me and, in part, to retain and preserve at least part of the property for my family.

> 7. On December 15, 2010 as a result of these negotiations, I agreed with Buetta and Rajena Scott's attorney, Bill Youngkin, that I was going to convey all of my undivided interest in the surface estate of the 285 acres being litigated, but I would retain my mineral interest in that same property. We further agreed that previously there had been a portion of the 285 acres at issue deeded to my family, the Scott heirs, which contained 45 acres, but that the 45 acres may not have been validly described in that deed. We then agreed that for my agreeing not to continue to contest the litigation and to convey all of my surface ownership in the 285 acres to them, Buetta Scott and Rajena Scott would convey by deed with a legal description to be determined by survey, the undivided one-half interest in the 45 acres at issue resulting from the Judgment to be entered in the lawsuit [Cause No. 10-000305-CV-85], … which would produce ownership in me and all the other heirs of Alex Scott, so that the Alex Scott heirs would then have 100% ownership in that 45 acre tract yet to be surveyed. We agreed Buetta Scott and Rajena Scott

would make this conveyance once the Judgment in the pending lawsuit became final. This was fully stated and dictated by Mr. Youngkin to Judge Langley and his court reporter.

8. I was then asked whether the terms that Mr. Youngkin had stated to the Judge reflected the agreement and understanding that we had agreed to. I answered, yes it does and I have no questions or concerns regarding this agreement. Finally I again expressed by agreement that upon conclusion by Judgment of the suit and completion of the survey, I would convey my surface interest in the entire 285 acres to Buetta Scott and Rajena Scott and the Plaintiffs, Buetta Scott and Rajena Scott would convey their 50% interest in the Alex Scott survey back to me and the other heirs of Alex Scott and at that time the Defendant Scott heirs would own 100% of the 45 acres.

….

11. I would not have agreed to the settlement of Cause No. 10-000305-CV-85 and the conveyance of my surface interest in the 285 acres unless Buetta Scott and Rajena Scott agreed to convey all their interests in the 45 acres so that it would be owned one hundred percent (100%) by the Scott heirs. It was my intention and part of the Rule 11 Agreement that the 45 acre tract would be set aside for the exclusive use of the Scott heirs.

12. I relied on the representations and commitments made by Bill Youngkin as Buetta Scott's and Rajena Scott's attorney in agreeing to the Rule 11 Agreement. I would not have entered into that Agreement nor settled Cause No. 10-000305-CV-85 had I known that there was never an intent to convey as a result of the Judgment, the 45 acre tract to me and the other Scott heirs for our exclusive use.

13. I signed and my lawyer delivered a deed conveying all of my interest in the surface estate of the 285 acres … .

14. I never received a deed from Buetta Scott or Rajena Scott. I never received a deed from Curtis Capps complying with the Rule 11 Agreement. The deed Bill Youngkin showed me in my deposition … conveyed only my original interest in the 45 acre tract and not the entire interest adjudged, and conveyed to Buetta and Rajena Scott by the Judgment … , and it does not comply with the Rule 11 Agreement. The first time I saw this deed was at my deposition.

15. Curtis Capps has now filed, through his attorney, Bill Youngkin, Cause No. 14-000569-CV-361 against the Known and Unknown Heirs of Alex Scott including me and claims he owns by undivided interest 22.928347 acres or 51.2159% of the 45 acres which Mr. Youngkin agreed to have his clients convey to me and the Alex Scott heirs for our exclusive use and possession upon completion of the survey and upon completion of the litigation and entry of Judgment in the 2010 lawsuit.

Hines's evidence, which we view in the light most favorable to Hines, shows that he entered into a settlement agreement with the Scotts, who were to convey by deed to Hines an interest in the 45 acres that would leave the Alex Scott heirs with 100% ownership of the 45-acre tract. Instead, the Scotts conveyed their interest in the 45 acres to Capps, another Youngkin client, and Capps conveyed to Hines an interest in the 45 acres that did not leave the Alex Scott heirs with 100% ownership. Youngkin prepared the deeds for these conveyances, and those deeds are included in Hines's evidence. Capps then used his ownership interest that he obtained from the Scotts in the 45 acres in yet another lawsuit in which he was represented by Youngkin. We conclude that Hines established by clear and specific evidence, including circumstantial evidence, a prima facie case for each essential element of his fraud and conspiracy claims against Youngkin.

We further conclude that, in the face of Hines's prima facie case, Youngkin did not establish his litigation-privilege defense by a preponderance of the evidence with his bare assertion that he was acting as the Scotts' attorney in litigation.

Accordingly, we overrule issue one and need not address issue two on the recovery of attorney's fees in the event of dismissal under the TCPA. We affirm the trial court's order denying Youngkin's motion to dismiss, and this case is remanded.[8]


REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins

---

[8] We unfortunately must address the unprofessional comments made by Youngkin's attorney in his reply brief. These personal attacks ("dirty lawyering," "casual dishonesty," "unscrupulous lawyers") against Hines's counsel have no place in an appellate brief, and they blatantly violate several provisions in the Texas Lawyer's Creed pertaining to civility and courtesy. These comments add nothing to the case; they only reflect poorly on Youngkin's attorney.

(Chief Justice Gray concurs in the judgment only.)

Affirmed

Opinion delivered and filed July 13, 2016

[CV06]

