# IN THE SUPREME COURT OF TEXAS

══════════

No. 16-0647

══════════

THE STATE OF TEXAS EX REL.
GEORGE DARRELL BEST, PETITIONER,

v.

PAUL REED HARPER, RESPONDENT

════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TENTH DISTRICT OF TEXAS

════════════════════════════════════

JUSTICE BOYD, joined by JUSTICE JOHNSON and JUSTICE LEHRMANN, dissenting.

The Court thinks this suit to remove Paul Harper from office is a mere "pretext" and "transparent retaliation against Harper's quixotic political beliefs." *Ante* at ___. And because the state should not have pursued the suit, it should have to reimburse Harper's attorney's fees and court costs and, perhaps, pay additional sanctions. *Ante* at ___. Maybe it should. Maybe that's a good result for Harper. But "the *common* good is best served by faithful adherence to the rule of law, and not by individual judges seeking good in individual cases." Hon. Thomas M. Reavley & Ryan S. Killian, *Against the Rule of Judges*, 68 BAYLOR L. REV. 661, 669 (2016) (emphasis added). To reach its good result in this case, the Court ignores the governing statute's language and undermines our well-established sovereign-immunity precedent. Applying the statute's language and our carefully constructed immunity doctrine, I would hold that the Texas Citizens Participation

Act does not apply to this enforcement action; and even if it did apply, sovereign immunity bars Harper's counterclaim for fees, costs, and sanctions.[1] I respectfully dissent.

## I.
### Enforcement Action

The Texas Citizens Participation Act (TCPA) "does not apply" to "an enforcement action that is brought in the name of this state or a political subdivision of this state by the attorney general, a district attorney, a criminal district attorney, or a county attorney." TEX. CIV. PRAC. & REM. CODE § 27.010(a). Here, a county attorney, acting for the state, sought to remove Harper from his elected position on a hospital district's board under Chapter 87 of the Local Government Code. *See* TEX. LOC. GOV'T CODE § 87.013(a)(1), (2). The first issue is whether this Chapter 87 removal action is an "enforcement action." If it is, Harper cannot recover his costs, fees, or sanctions under the TCPA because the TCPA "does not apply."

The TCPA does not define "enforcement action." Considering its common, ordinary meaning and its statutory context, the Court construes the term to mean a legal action that attempts "to enforce a substantive legal prohibition against unlawful conduct." *Ante* at ___. Although I

---

[1] For the reasons the Court explains, I agree that this case is not moot and that it constitutes a "legal action" under the TCPA.

cannot fully join the Court's reasoning,[2] I agree that its definition adequately captures the term's common, ordinary meaning.[3] But I do not agree with the Court's application of that definition.

---

[2] In particular, I do not join the Court's reliance on "that last redoubt of losing causes, the proposition that the statute at hand should be liberally construed to achieve its purposes." *Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 135 (1995). Because no statute "pursues its purposes at all costs," *Rodriguez v. United States*, 480 U.S. 522, 525 (1987) (per curiam), courts "are bound, not only by the ultimate purposes [the Legislature] has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes." *MCI Telecomm. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 231 n.4 (1994). It thus "frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez*, 514 U.S. at 526. Disregarding a term's common, ordinary meaning under the assumption that the Legislature must have intended some other meaning because it better supports the statute's purpose is "simply irrational," *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233–34 (2013), and the "most impermissibl[e]" approach to statutory construction, *Rodriguez*, 480 U.S. at 525.

Because of its misplaced reliance on the TCPA's purpose, the Court confuses the claim's *nature* with its *merits*. The Court holds that the attempt to remove Harper for "incompetency" is not an "enforcement action" under the TCPA because it lacks merit and is based solely on the defendant's exercise of his right to free speech. *See, e.g.*, *ante* at ___ (characterizing the claim as a "pretext for forcing Harper to cease acting on those beliefs that won him his office in the first place"), ___ (characterizing the claims as "attacks on core political speech"). But the question of whether the claim has merit is relevant to the trial court's decision whether to *dismiss* the claim, not to whether the TCPA *applies* in the first place. *See* TEX. CIV. PRAC. & REM. CODE § 27.005 (providing that court shall dismiss a suit if the evidence shows that it is based on, relates to, or is in response to the defendant's exercise of the rights to free speech, to petition, or of association; unless the evidence establishes a prima facie case for each element of the claim; unless the evidence establishes each element of a valid defense). If the claim constitutes an enforcement action, Harper cannot seek dismissal *under the TCPA* because the TCPA does not apply *even if* the claim lacks merit. And the fact that the claim is based on the defendant's free speech is a prerequisite for dismissal under the TCPA, not a prerequisite for the TCPA's enforcement-action exemption. *Id.* §§ 27.003(a), .005(b). Under the Court's purpose-based reasoning, the enforcement-action exemption will never apply if the defendant is entitled to dismissal, and thus the exemption means nothing at all. If the suit is an enforcement action but is based on the defendant's free speech, the exemption would not apply but the defendant would always meet the prerequisite for dismissal. If it is an enforcement action and is not based on free speech, the exemption would apply and the defendant would not be entitled to dismissal. In other words, under the Court's construction, the exemption would merely prevent the TCPA from applying to claims that would not be subject to dismissal under the TCPA anyway.

[3] I do not agree, however, with the Court's suggestion that a *substantive* legal prohibition must appear in some "specific *statutory* provision" and must be enforceable by "criminal or civil penalties." *Ante* at ___, ___ (emphasis added). "Substantive" does not mean "statutory," and "substantive" requirements are not enforceable only by "criminal convictions and civil penalt[ies]." Substantive law is the "part of the law that creates, defines, and regulates the rights, duties, and powers of parties." *Substantive Law*, BLACK'S LAW DICTIONARY (10th ed. 2014). It is the counterpart of "procedural law," which "prescribe[s] the steps for having a right or duty judicially enforced, as opposed to the [substantive] law that defines the specific rights or duties themselves." *Procedural Law*, BLACK'S LAW DICTIONARY (10th ed. 2014).

If the Court intends to suggest that an enforcement action must seek to enforce a *statutory* obligation or prohibition, that suggestion ignores the term's common, ordinary meaning. The Legislature commonly uses the term to refer to actions to enforce not just statutory obligations, but rules, orders, and a variety of other substantive legal duties. *See, e.g.*, TEX. GOV'T CODE § 417.010(b) (authorizing state fire marshal to bring an "enforcement action" to revoke the licenses of those who violate any "rule or order adopted under" the applicable statute); TEX. WATER CODE § 7.002 (granting state commission "enforcement authority" to "initiate an action" to "compel compliance" not only with relevant statutes, but also with the "rules, orders, permits, or other decisions of the commission"). More specifically, the Legislature commonly uses the term to refer to actions to compel compliance with a position's general

The Court agrees that this Chapter 87 removal action is an enforcement action *to the extent*

it seeks removal based on Harper's alleged "official misconduct," because his alleged misconduct

arises from "unlawful" actions in violation of the Texas Open Meetings Act.[4] *Ante* at ___. But the

legal duties. The Finance Code, for example, authorizes the state banking commissioner to pursue an "enforcement action" to "remove" a bank's officer, director, or employee "from office or employment" if the person "engaged in a breach of trust or other fiduciary duty" or even "conducted business in an unsafe or unsound manner." TEX. FIN. CODE §§ 35.002(a), .003(a); *see also id.* §§ 185.002(a), .003(a) (same for enforcement actions against state trust company subsidiary officers and employees). And the Insurance Code authorizes the state insurance commissioner to "take an enforcement action" to "suspend or revoke" a health maintenance organization's certificate of authority if the organization "is operating in a manner" that is "significantly contrary to its basic organizational documents or health care plan;" provides "a health care plan that does not provide or arrange for basic health care services;" cannot "fulfill its obligation" to provide "health care services as required under its health care plan;" is "no longer financially responsible and may reasonably be expected to be unable to meet its obligations to enrollees or prospective enrollees;" or "would be hazardous to its enrollees if it continued in operation." TEX. INS. CODE § 843.461(b); *see also id.* § 848.201(b) (same for enforcement actions against a health care collaborative). In short, in common usage, the phrase "enforcement action" includes government actions to compel compliance with more than just *statutory* prohibitions. But as I explain, a Chapter 87 removal suit is an enforcement action under either approach because it seeks to enforce statutorily imposed official duties.

[4] The court of appeals held that this suit is not an enforcement action because it sought to *remove* Harper from his elected position rather than to *compel* him to comply with the position's duties. *See Harper v. Best*, 493 S.W.3d 105, 111 (Tex. App.—Waco 2016) ("Harper cannot comply with his duties if he is no longer a board member."). The Court disagrees and holds that a Chapter 87 action *can* be an enforcement action even though it seeks only to remove the defendant from a county office. *Ante* at ___. I agree with the Court on this point. We must apply the term's common, ordinary meaning, and the legislature commonly uses the term "enforcement action" to refer to government actions to remove a person from a position or to revoke the person's authority to hold that position. *See, e.g.*, TEX. BUS. & COM. CODE § 304.253(b)(3) (authorizing state licensing agencies to "enforce" the Telemarketing Disclosure and Privacy Act by revoking a violator's license); TEX. FIN. CODE §§ 35.003(a), .0035(b), .008, .009(a-1)(2) (authorizing banking commissioner to pursue an "enforcement action" to enforce banking laws by issuing an "enforcement order" that removes a state bank official or employee "from office or employment," and to "refer the matter to the attorney general for enforcement by injunction or any other available remedy"), 185.003(a), .0035(b), .008, .009(a-1)(2) (same for enforcement actions against state trust company subsidiary officers and employees); TEX. GOV'T CODE § 417.010(b)(2), (d) (authorizing state fire marshal to pursue "enforcement actions" including "canceling, revoking, or suspending a license or certificate of registration"); TEX. HEALTH & SAFETY CODE §§ 12.0145(a) (referring to an "enforcement action . . . in which any kind of sanction is imposed, including" the "revocation of a license or other form of permission to engage in an activity"), 142.0094(b)(1)(D) (referring to "an enforcement action" to include "a contested case hearing involving denial, suspension, or revocation of a license issued under this chapter"), 247.049 (same for action against assisted living facility), 241.053(b) (referring to an action to revoke a hospital's license as an "enforcement action"); TEX. INS. CODE §§ 843.461(a) (in section entitled "Enforcement Actions," authorizing insurance commissioner to "suspend or revoke a certificate of authority issued to a health maintenance organization under this chapter"), 848.201(a) & (b) (authorizing insurance commissioner to pursue "enforcement action" to "suspend or revoke a certificate of authority issued to a health care collaborative"); TEX. UTIL. CODE § 39.264(o) (authorizing state agency to pursue "enforcement action" by "ordering the facility to cease operations"); TEX. WATER CODE §§ 7.003, .302, .303, .310 (granting state agency "enforcement" authority, including authority to pursue an "enforcement action" to "suspend or revoke a license, certificate, or registration"). While a removal action may not "compel compliance" by forcing the defendant to perform certain actions, it does "compel compliance" by preventing the defendant from continuing to violate the standards that require those actions.

4

Court holds that this is not an enforcement action to the extent it seeks removal based on Harper's alleged "incompetency" because incompetency "is not against the law." *Ante* at ___. According to the Court, Harper could seek dismissal and recover attorney's fees, costs, and sanctions under the TCPA to the extent the state sought removal based on incompetency allegations, but not to the extent the state relied on misconduct allegations. *Ante* at ___. By inventing this dichotomy, the Court finds a way to allow Harper to recover at least some costs and fees under the TCPA.[5] But it does so only by ignoring Chapter 87's governing provisions, which—for both incompetency and misconduct—permit removal only to enforce an officer's statutorily imposed "official duties."

Chapter 87 describes three grounds for removal: "incompetency," "official misconduct," and "intoxication on or off duty caused by drinking an alcoholic beverage." TEX. LOC. GOV'T CODE § 87.013(a). As the Court notes, the statute defines official misconduct to mean "intentional, *unlawful* behavior," but the remainder of that definition explains that the behavior must relate "to *official duties* by an officer entrusted with the administration of justice or the execution of the law. The term includes an intentional or corrupt failure, refusal, or neglect of an officer to *perform a duty* imposed on the officer by law." *Id.* § 87.011(3) (emphases added). In the very same way, the statute defines incompetency as "gross ignorance of *official duties*;" "gross carelessness in the discharge of *those duties*;" or "unfitness or inability to promptly and properly discharge *official duties* because of a serious physical or mental defect that did not exist at the time of the officer's election." *Id.* § 87.011(2) (emphases added).

---

[5] The Court makes no effort to explain how—or even whether—Harper or any similar defendant could effectively segregate costs and fees incurred defending against incompetency allegations from those incurred defending misconduct allegations. Although Harper's failure to segregate would not necessarily preclude recovery at this point, Harper must at least provide "sufficiently detailed information" to enable the trial court to make that distinction. *Kinsel v. Lindsey*, 526 S.W.3d 411, 428 (Tex. 2017).

The Court simply ignores this statutory language and suggests that Chapter 87's incompetency ground permits removal merely for "behavior undesirable in a public official." *Ante* at ___. But according to the statute's language, the behavior that justifies removal—whether based on incompetency or misconduct—must involve the officer's failure to fulfill the office's "official duties."[6] "A finding of guilt, or the sustaining of the allegation or cause of *any one of such charges*, by a verdict of the jury, would authorize and justify the judgment for removal." *Huntress v. State*, 88 S.W.2d 636, 648 (Tex. Civ. App.—San Antonio 1935, no writ) (emphasis added).

A county officer's "official duties" are *substantive* duties imposed by *statutory* law. A failure to fulfil those duties runs afoul of that law. The Texas Constitution provides that county officers' duties shall be "prescribed" or "regulated" by the legislature. TEX. CONST. art. V §§ 20, 21, 23. Pursuant to that authority, the legislature has provided that a county hospital district has a statutory duty to "provide adequate hospital services for the district," and its board has a statutory duty to "manage, control, and administer the district" to fulfill that purpose. TEX. HEALTH & SAFETY CODE §§ 282.050, .041(a). Before taking office, a board member must take an oath "to faithfully and impartially discharge the duties of a board member." *Id.* § 282.022(a)(1).

When the state pursues a Chapter 87 suit to remove a board member from office, it seeks to compel compliance with the officer's "official duties," regardless of whether it alleges incompetency or misconduct. TEX. LOC. GOV'T CODE § 87.011(2), (3). Under either ground for removal, the suit is an enforcement action under the common, ordinary meaning of that phrase.

---

[6] Chapter 87 does not further define the "intoxication" ground for removal. This Court explained long ago that this ground "in effect declares habitual drunkenness to be a disqualification from holding such offices," as opposed to a "declaration of delinquency" or a lack of "capacity or character." *Trigg v. State*, 49 Tex. 645, 669 (1878). In context, this ground would appear to apply when the officer's alcohol usage affects his ability to fulfill his official duties, but as the State does not seek to remove Harper under this ground we need not address it here.

6

*See, e.g., State v. Ennis*, 195 S.W.2d 151, 152 (Tex. Civ. App.—San Antonio 1946, writ ref'd n.r.e.) (explaining that the "right sought to be *enforced*" under Chapter 87 is "a public right as distinguished from a private right") (emphasis added). Contrary to the Court's assertion, this suit to remove Harper from the district's board—whether based on incompetency or misconduct— seeks to compel compliance with that position's official duties. It is thus an enforcement action under the term's common, ordinary meaning, and the TCPA "does not apply." TEX. CIV. PRAC. & REM. CODE § 27.010(a).

## II.
## Sovereign Immunity

After holding that an incompetency-based removal action under Chapter 87 is not an enforcement action and thus the TCPA applies, the Court then holds that immunity from suit does not protect the state from Harper's TCPA counterclaim for attorney's fees, costs, and sanctions.[7] This holding represents a radical departure from our immunity jurisprudence. Although this Court certainly has authority to alter sovereign immunity's contours, the Court alters them here—and drastically so—simply because the Court believes the state should have to pay Harper's costs, fees, and sanctions. Upholding our well-reasoned and well-established immunity jurisprudence, I would hold that sovereign immunity from suit bars Harper's counterclaim because the state does not seek any kind of monetary damages or recovery against which his claim could provide an offset.

---

[7] The court of appeals awarded Harper his appellate costs and remanded the case with instructions that the trial court dismiss the claims and determine "Harper's request for court costs, reasonable attorney's fees, and sanctions." At the beginning of its immunity discussion, the Court suggests that its holding applies only to the judgment awarding appellate costs because the trial court has not yet made a determination of trial costs, fees, and sanctions. *Ante* at ___. But we must decide now whether immunity bars that claim even though the trial court has not yet made that determination because the trial court has no jurisdiction to even consider the issue if immunity from suit bars Harper's claim. So as the Court's conclusion confirms, its immunity holding necessarily relates not only to the award of appellate costs but also to "the trial court's determination of court costs, reasonable attorney's fees, and sanctions" on remand. *Ante* at ___.

7

As the Court explains, immunity from suit is jurisdictional and, absent waiver, prevents courts from exercising jurisdiction over a claim against the state. *Ante* at ___. We defer to the legislature to waive the state's immunity, and any such waiver is effective only when it is clear and unambiguous. *Ante* at ___. The Court correctly concludes that neither the TCPA nor Chapter 87 clearly and unambiguously waives the state's immunity. *Ante* at ___. Yet the Court decides to "abrogate" immunity against Harper's counterclaim for attorney's fees, costs, and sanctions under the TCPA. *Ante* at ___.

The Court begins its discussion of this issue with the general assertion that "immunity does not apply in certain situations in which the state 'join[s] into the litigation process.'" *Ante* at ___ (quoting *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 18 371, 376 (Tex. 2006), and citing *Kinnear v. Tex. Comm'n on Human Rights*, 14 S.W.3d 299, 300 (Tex. 2000) (per curiam)). It then acknowledges our more specific (and more recent) explanations that, under *Reata*, "'a governmental entity does not have immunity from suit for *monetary* claims against it that are "germane to, connected with, and properly defensive to" affirmative claims by the entity,' to the extent that the claims against the entity *offset* the entity's own claims." *Ante* at ___ (emphases added) (quoting *City of Dallas v. Albert*, 354 S.W.3d 368, 372 (Tex. 2011), and citing *Manbeck v. Austin Indep. Sch. Dist.*, 381 S.W.3d 528, 532–33 (Tex. 2012) (per curiam)). The Court agrees that the *Reata* rule does not apply here, however, because the state has not asserted any monetary claims against which Harper's counterclaims could provide an offset. *Ante* at ___.

But the Court then asserts that *Reata* "does not purport to map the full boundary separating counterclaims that sovereign immunity bars from those it does not," and our per curiam decisions in *Kinnear* and *Manbeck* reflect that "sovereign immunity sometimes does and sometimes does

8

not protect the state from counterclaims for attorney's fees." *Ante* at ___, ___. Purporting to address an issue of "first impression," the Court announces a narrow holding that immunity from suit does not reach a counterclaim *for attorney's fees* under *the TCPA*. *Ante* at ___. In support of this holding, the Court claims to be promoting the TCPA's purpose to protect the constitutional rights of those who participate in government and require those who fail to prove a prima facie case to pay litigation costs. *Ante* at ___. And because the state "risks paying only attorney's fees," the Court believes its TCPA-specific rule abrogating immunity "does not present any grave danger to the public fisc." *Ante* at ___.

The Court reveals its true motivation, however, by expressing its own view that the state "should not be suing to prevent its own citizens from participating in government—especially when it lacks even a prima facie case against them." *Ante* at ___. While the Court certainly has the power to "abrogate" sovereign immunity however it wants, its decision in this case undermines the distinction we have recognized between the *scope* of immunity and a *waiver* of immunity. The Court's result-oriented decision to abrogate immunity in this case confuses our immunity jurisprudence, ignores the principles on which immunity is based, and eschews the deference we have consistently given to the legislature to decide whether and when to waive immunity.

This Court has carefully crafted the immunity doctrine, especially over the past few decades. Long ago, the Court stated quite broadly, and without any real analysis, that when "a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defense will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense by answer or cross-complaint germane to the matter in controversy." *Anderson, Clayton & Co. v. Allred*, 62 S.W.2d 107, 110 (Tex. 1933). More recently, in *Kinnear* (a

9

four-paragraph, per curiam opinion), the Court stated in *dicta*[8] that because the Texas Commission on Human Rights "initiated this proceeding under the Texas Fair Housing Act, and Kinnear claimed attorney fees as a consequence of that suit, the jurisdictional question in this case"—that is, whether immunity from suit applied or was waived—"was answered when the Commission filed suit, regardless of whether the Commission can ultimately be liable for fees." 14 S.W.3d at 300.

After *Kinnear*, however, the Court held in *Reata* that the state "does not have immunity from suit as to [counterclaims] which are germane to, connected with, and properly defensive to the [government's] claims, to the extent [the counterclaims] offset those asserted by the [government]." *Reata*, 197 S.W.3d at 373. We explained that, although "there may have been some question after *Anderson* regarding whether sovereign immunity continues to exist when an affirmative claim for relief is filed by a governmental entity, subsequent cases indicate that under such circumstances immunity from suit no longer *completely* exists for the governmental entity." *Id.* at 376 (emphasis added). And we cited *Kinnear* for the proposition that "the trial court had jurisdiction over claims against the State in a case where the State had filed suit." *Id.* (citing *Kinnear*, 14 S.W.3d at 300). We held in *Reata* that when the state chooses to involve itself in litigation, immunity from suit does not apply to its opponent's counterclaims *if* (1) the government is seeking to recover "monetary relief," (2) the counterclaims are "germane to, connected with, and properly defensive to" the government's claims, and (3) any recovery on the counterclaims

---

[8] The court of appeals in *Kinnear* concluded *sua sponte* that the state's immunity *from liability* barred the award to Kinnear. *Kinnear*, 14 S.W.3d at 300. This Court reversed, holding that immunity from liability is an affirmative defense and is not jurisdictional, so the Commission had waived that defense by failing to plead it in the trial court or raise it on appeal. *Id.* The Commission's immunity *from suit* was not at issue, and the Court referred to that issue ("the jurisdictional question") only in the one quoted sentence, in passing, and without citing any authority.

serves only to "offset" the monetary relief the government may recover. *Id.* at 376–77. Once the government "asserts affirmative claims *for monetary recovery*," we explained, the government "must participate in the litigation process as an ordinary litigant, *save for the limitation* that the [government] continues to have immunity from affirmative damage claims against it for monetary relief *exceeding amounts necessary to offset the [government's] claims*." *Id.* at 377 (emphases added).

As this Court and the courts of appeals have confirmed, *Reata* "clarified and modified" sovereign immunity law and "limited" *Kinnear* and *Anderson* by carefully defining the scope of immunity when the government chooses to file suit. *See Albert*, 354 S.W.3d at 373; *Emps. Ret. Sys. v. Putnam, LLC*, 294 S.W.3d 309, 324–25 (Tex. App.—Austin 2009, no pet.) ("[T]he Texas Supreme Court limited *Kinnear* by issuing *Reata*."); *see also Nazari v. State*, — S.W.3d —, — (Tex. June 22, 2018) (explaining that we "expounded" on *Anderson* "and other cases like it" in *Reata*). Contrary to the Court's assertion that *Reata* "does not hold that a monetary claim is a necessary condition for abrogation in every instance," *ante* at ___, we have remanded a number of cases for reconsideration in light of *Reata*, explaining that under *Reata*, the government "*retains immunity from suit as to [counterclaims] for monetary damages . . . to the extent [the counterclaimant seeks damages that] exceed amounts offsetting the [government's] monetary recovery, absent legislative waiver of that immunity*." *City of Irving v. Inform Const., Inc.*, 201 S.W.3d 693, 694 (Tex. 2006) (per curiam).[9] And in a separate case decided last week, the Court

---

[9] *See also State v. Fid. & Deposit Co.*, 223 S.W.3d 309, 310–11 (Tex. 2007) (per curiam) (explaining that under *Reata*, "TxDOT retains immunity from suit, however, to the extent that Fidelity's damages exceed amounts offsetting TxDOT's monetary recovery"); *Port Neches-Groves Indep. Sch. Dist. v. Pyramid Constructors, L.L.P.*, 201 S.W.3d 679, 680–81 (Tex. 2006) (per curiam) (remanding because, contrary to *Reata*, "the court of appeals held that

holds that *Reata*'s first requirement—that the government sue for "monetary relief"—actually requires that the government sue for monetary *damages*, not just any monetary *relief*, so "sovereign immunity protects the State from counterclaims that seek to offset a penalty." *Nazari*, — S.W.3d at —.

But here, the Court carves out an exception applicable only to counterclaims for costs, attorney's fees, and sanctions under the TCPA. The fact that Harper seeks only that relief, however, does not justify the Court's holding, at least not according to our post-*Reata* decisions. *See Manbeck* 381 S.W.2d at 532–33 (holding that, under *Reata*, immunity from suit barred counterclaim for attorney's fees because the governmental entity did not assert a claim for "money damages"); *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011) (holding that, under *Reata*, immunity from suit applies even to a counterclaim for attorney's fees unless the fees can serve as an offset against the government's monetary recovery). Consistent with these decisions and *Reata*, immunity from suit bars Harper's counterclaims because the state has not sought any kind of monetary relief against which Harper's recovery could provide an offset.

The Court, however, concludes that the *legislature's* purpose in enacting the TCPA justifies *the Court's* decision to abrogate the state's immunity from suit against TCPA counterclaims. *Ante* at ___. Unlike the Court's misplaced reliance on the TCPA's purpose to construe the statutory term "enforcement action," *see supra* n.2, the Court relies on that purpose

---

the District's counterclaim operated as a complete waiver of immunity"); *City of Angleton v. USFilter Operating Servs., Inc.*, 201 S.W.3d 677, 678 (Tex. 2006) (per curiam) (same).

here to shift the responsibility for its own policy decision. The Court cannot claim to be promoting the legislature's purpose when—as the Court itself agrees—the legislature did not waive the state's immunity from suit in the TCPA. *See ante* at ___. Nor does anything about the TCPA suggest that the legislature wanted the Court to treat the TCPA differently than any other statute that allows for an award of attorney's fees. To the contrary, the legislature has made clear its view (and we have consistently and repeatedly agreed) that we cannot find that a statute waives immunity unless it does so by "clear and unambiguous" language. TEX. GOV'T CODE § 311.034. Because the legislature has not clearly and unambiguously waived immunity in the TCPA, the Court cannot genuinely claim to be promoting the legislature's purpose by judicially abrogating immunity the legislature has not waived. *See supra* n.3. Because the legislature has not waived immunity in the TCPA, the Court's implementation of its own purposes contradicts the legislature's purpose by waiving the state's immunity when the legislature has chosen not to waive it.

To be sure, the Court has authority to abrogate sovereign immunity in whole or in part, but its holding today represents a sea change from our current immunity jurisprudence. I cannot join the Court's cavalier approach to such a well-established and important doctrine.

### III.
### Conclusion

I am sympathetic to the Court's desire to allow Paul Harper to recover the fees and costs he incurred defending this removal action, but sympathy cannot determine the outcome of this case. The question we must decide is whether Harper can recover those losses under the TCPA. Because this Chapter 87 removal action is an "enforcement action" regardless of the grounds asserted, the TCPA "does not apply." And even if it did apply, the state's immunity from suit bars Harper's counterclaim for court costs, attorney's fees, and sanctions because the state neither

13

sought nor obtained any monetary recovery that an award to Harper could offset. Because Harper's counterclaim presents the only issue that is not now moot in this case, I would reverse the court of appeals' judgment remanding the case for an award of costs, fees, and sanctions and render judgment dismissing this case. Because the Court holds otherwise, I respectfully dissent.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: June 29, 2018